IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 22, 2015


**LAWRENCE FREEZE v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Fentress County**
**No. 13PCR6      E. Shayne Sexton, Judge**

_____

**No. M2014-01396-CCA-R3-PC – Filed June 25, 2015**

_____


The petitioner, Lawrence Freeze, appeals the denial of his petition for post-conviction relief. The petitioner pled nolo contendere to aggravated sexual battery and rape, both Class B felonies, and received an effective sentence of ten years in the Department of Correction. On appeal, he contends that the court erred in denying his petition because he was denied effective assistance of counsel, which resulted in an unknowing and involuntary guilty plea. Specifically, he contends that trial counsel's failure to be prepared for trial left him with no choice but to accept the agreement. Following review of the record, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, delivered the opinion of the Court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

Chelsea Nicholson, Nashville, Tennessee, for the Appellant, Lawrence Freeze.

Herbert H. Slatery III, Attorney General and Reporter; Meredith DeVault, Senior Counsel; Jared Effler, District Attorney General; and John W. Galloway, Jr., Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Procedural History and Factual Background**

The petitioner was indicted in two separate cases for sexual crimes against two minors. In Case No. 2011-CR-119, the petitioner was indicted for one count of aggravated sexual battery. At the plea hearing, the State recited that the testimony of an adult witness would be as follows:

On Wednesday, 10-19-2011, I was cooking brunch for [E.],[1] [the victim], [K], [M], and myself. Sunny [the petitioner] knocked on my door and asked to use the phone. [The petitioner] used the phone at my kitchen table and rolled his cigarettes. [The petitioner] then went to my living room and sat on the couch. While I was cooking, I saw [the victim] standing with one leg on the couch and the other on the floor with her hands behind her back. [The petitioner] had his hand on her vagina. I then went around the table to the living room; [the petitioner] pulled his arms back in a sudden motion. I then yelled "girls get in here with me!" I took the girls in the kitchen and was turning off the stove and burners when he came into the kitchen just staring at me. I then took the girls to the bedroom and asked them what happened. [E]said [the petitioner] elbowed [the victim], and before [E] could finish [the victim] said he touched my Pee Pee. When I opened the door [the petitioner] had left. [The petitioner] usually calls me in the morning around 6 a.m. to make sure I woke up. [The petitioner] has not called since this incident.

According to the State, this witness was also prepared to identify photographs of her home where the incident occurred, which established her ability to see what occurred. The State also indicated that the testimony of a second witness would be that:

She is the cousin to the victim in this case, that she is seven years old, that she was sitting on one end of the couch when her aunt observed what happened in the statement there, and that she would likewise testify that she observed [the petitioner] touch [the victim's] vagina with his hand on the outer garment.

In Case No. 2012-CR-21, the petitioner was indicted for three counts of rape of a child. The Stated noted the victim would give testimony at trial in accordance with her statement given to the Department of Children's Services. That statement reads as follows:

[The victim] also disclosed that she and her sister have been traded for sex and money. She indicated that [the petitioner] is her friend Destiny's grandpa and

---

1 In order to protect the identity of the witnesses, we will refer to them by their initials.

that he has also had sex with her. She reported her first sexual encounter with [the petitioner] was in the spring of 2011. [The victim] reported this occurred two times. The first time [the victim] reported that [the petitioner] gave her a pill, what she believes was a Xanax. She was outside on the back porch when [the petitioner] pushed her down on the step and proceeded to get on top of her. She reported that he unzipped his pants and he took her pants and panties off, and then proceeded to have sex with her. [The victim] indicated that her mother, Margaret, received pills from [the petitioner] for the sexual encounter. [The victim] indicated that the second sexual encounter with [the petitioner] occurred in his bedroom. She described the room as having a big bed and an alarm clock beside the bed. She indicated that [the petitioner] insisted on her taking off her own clothes. He then got on top of her and began having sex with her. She reported that [the petitioner] was slapping her body throughout the encounter saying things such a[s] "you know you like it."

Different attorneys were appointed to represent the petitioner in each case. Case No. 2011-CR-119 was scheduled first, and the case proceeded to trial. Following voir dire and opening statements, however, the petitioner entered a nolo contendere plea to one count of aggravated sexual battery and one count of rape, resolving both of his pending cases. The negotiated plea agreement provided for concurrent sentences of ten years at 100%. Prior to accepting the plea, the trial court extensively questioned the petitioner under oath regarding his understanding of a nolo contendere plea, the crimes to which he was pleading, and the applicable sentencing ranges. The court also instructed the petitioner in regard to the applicable rights he would be waiving by pleading nolo contendere. The court also specifically informed the petitioner that by signing the agreement form, the petitioner was indicating to the court that he had read and understood the agreement itself. The petitioner replied that he understood. The petitioner also indicated that he was not under the influence of any medication and that no one had forced him to accept the agreement. He testified that he was satisfied with both counsels' performance and that he was satisfied that they had investigated the facts and law sufficiently. The petitioner asked the court questions directly regarding the imposed community supervision for life and a stipulation of the evidence read by the State.

No direct appeal was taken. The petitioner did, however, file a timely pro se petition for post-conviction relief. Counsel was subsequently appointed, and an amended petition was filed. In the petition, it was alleged that his plea was not entered knowingly and voluntarily because he was denied his right to the effective assistance of counsel. It was asserted that trial counsel's lack of preparation coerced the petitioner into accepting the agreement. It was further alleged that trial counsel was ineffective for failing to properly prepare for trial, failing to subpoena witnesses, failing to subpoena medical records of a State witness for

3

impeachment purposes, and failing to communicate with the petitioner about the facts of the defense. A hearing was subsequently held on the matter at which trial counsel and the petitioner both testified.

Trial counsel testified that he represented the petitioner in the case in which the petitioner was charged with aggravated sexual battery. He testified that on the day of trial, following jury selection and opening statements, the petitioner informed him that he wished to discuss the plea agreement that the State had previously offered. Trial counsel had previously discussed the agreement with the petitioner, who had refused the offer. Trial counsel informed the court and was granted a short recess. He testified that he and the petitioner spoke about the agreement in the hallway for approximately ten to fifteen minutes. Trial counsel further testified that the petitioner's daughter's boyfriend, Phillip Olmstead, also approached and spoke with the petitioner about taking the plea. Trial counsel was clear, however, that he did not ask Mr. Olmstead to speak with the petitioner or in way attempt the coerce the petitioner to accept the agreement. In fact, trial counsel stated that did not speak with Mr. Olmstead outside the presence of the petitioner at all that day.

Trial counsel testified, during the discussion that day, he did discuss the possible minimum and maximum sentencing ranges with the petitioner, as well as that it was a 100% service sentence. They discussed the nolo contendere plea agreement and its consequences. In fact, trial counsel testified that he read every single word of the agreement to the petitioner.

Trial counsel testified that, prior to trial, he did request and receive a mental evaluation on the petitioner. The results indicated that the petitioner was competent to stand trial and that an insanity defense was not sustainable. He also reviewed the indictment with the petitioner and discussed the State's case. Discovery was also reviewed.

Trial counsel was questioned as to whether he recalled the petitioner's request that he subpoena medical records for a witness because the petitioner was concerned about her mental condition due to a methamphetamine problem. The petitioner wanted the records in order to impeach the witness's testimony at trial. However, trial counsel testified that he felt there was no need to subpoena the records as the witness acknowledged her addiction at the preliminary hearing and was cross-examined by trial counsel thoroughly. Trial counsel testified that he believed this was sufficient to impeach her testimony.

Trial counsel acknowledged that the petitioner had suggested he speak with two possible witnesses who the petitioner claimed would be beneficial to the defense. Trial counsel spoke with both but found that they had nothing helpful to offer the case and saw no reason to subpoena them for trial. The first informed him that she believed there was a government conspiracy to convict the petitioner. The second witness had gone to the victim's

4

apartment with the petitioner earlier, but he was not with the petitioner at the time of the crime. Thus, trial counsel concluded that neither witness had relevant information which would benefit the petitioner at trial. Additionally, in preparation for trial, trial counsel testified that he obtained records from the Department of Children's Services including the forensic interview from the victim in the second case.

Trial counsel acknowledged that he did not file for a bill of particulars in this case. According to trial counsel, the evidence at the preliminary hearing delineated the specific date, time, location, and description of the offenses charged. As such, he saw no need to file for a bill of particulars.

Trial counsel testified that the petitioner had a probation violation from a Florida conviction. The plea agreement provided that his Tennessee sentence would run concurrently to the Florida sentence. Trial counsel also noted that the State had filed notice which put the petitioner on notice that he actually qualified as a multiple offender and could face sentences of twelve to twenty years if convicted. The plea agreement allowed the petitioner to plead as a standard offender and receive a sentence of ten years. Trial counsel also reiterated that the agreement provided that two of the rape of a child charges were dismissed, and the remaining one was reduced to rape in the separate case. He noted that a rape of a child conviction would require a minimum sentence of twenty-five years and stated that the petitioner was aware of that.

Trial counsel noted that, during all his interactions with the petitioner, he never suspected that the petitioner was under the influence of drugs or medication. According to trial counsel, the petitioner "seemed fine." He again reiterated that he read every single word of the plea agreement to the petitioner. He testified that it took so long that the trial court actually came and checked on their progress. Counsel appointed in the second case was also present when the petitioner signed the agreement. Trial counsel testified that he "just felt like this is one I needed to take my time with and do it carefully."

The petitioner testified and offered a different version of events which occurred on the day of trial. According to him, during the jury selection trial counsel informed him that the plea agreement was still available. The petitioner testified that he informed trial counsel that he wanted to proceed to trial. The petitioner claimed that during a break in the proceedings, trial counsel met alone with Phillip Olmstead in the hallway. The petitioner testified that, Mr. Olmstead returned to the courtroom, and he looked "scared and wild eyed." He approached the petitioner and told him, "[t]hey are going to lambast you."

According to the petitioner, trial counsel then suggested that they move to the back hallway. The petitioner testified that trial counsel informed him that he would get ten years if

he accepted the plea agreement concurrent with his Florida sentence. The petitioner informed trial counsel that he was innocent and did not want to accept the deal. According to the petitioner, he got upset and his blood pressure went up. It was at that point that he agreed to accept the plea agreement. At that time, the group moved to a small office in the back. The petitioner testified that he did not read or look at the plea agreement, but he just signed it. He was unable to recall if trial counsel had read the agreement to him, although he did acknowledge that trial counsel had been reading something aloud.

The petitioner testified that, at some point, his second attorney also came into the room. The petitioner testified that he informed him that he was innocent, and the attorney advised him to not sign the agreement if that was the case. The petitioner stated that he then exited the room, as he had already signed the agreement.

The petitioner denied that trial counsel had discussed the minimum and maximum sentences or the preservation of appellate issues. He also claimed that trial counsel never reviewed the indictment or the charges with him. He also claimed trial counsel failed to discuss trial strategy with him, but he acknowledged that they did discuss potential witnesses. However, the petitioner believed that trial counsel should have subpoenaed the witnesses he suggested. The petitioner claimed that trial counsel failed to discuss "his side" of the story during preparation. The petitioner testified that he did believe that trial counsel had discussed the possibility of parole.

Finally, the petitioner acknowledged that, prior to accepting the plea agreement, the trial court had reviewed multiple rights with him. He also acknowledged that he was informed by the court of the possible sentencing ranges. He further admitted that he had stood before the court and stated that he was not forced or coerced into accepting the plea agreement and that he was satisfied with trial counsels' performance.

After hearing the evidence presented, the post-conviction court concluded that the petitioner had been afforded effective assistance of counsel and that the plea was entered knowingly and voluntarily. As such, the court denied the petition. The petitioner has timely appealed that decision.

**Analysis**

On appeal, the petitioner contends that the post-conviction court erred in denying his petition for relief. Specifically, he contends that the record establishes that he was denied effective assistance of counsel and that, as a result, his plea was not entered knowingly and voluntarily. He claims that "he felt like he was going to trial, and that his lawyer confused him with these [plea] discussions to the point that he did not feel like he knew what he was

doing." He further claims that he "felt like his lawyer had not subpoenaed witnesses and had no trial strategy." In an argument to support the credibility of his testimony, *i.e.* supporting that trial counsel in fact did not cover the possible minimum and maximum sentences, the petitioner notes that the agreement itself included only the charges and class, not the range of punishment and minimum and maximum sentences. The petitioner submits that "taking the hearing as a whole, [his] testimony depicts that his plea was not knowing and voluntary, and that taken all together, he was coerced" into accepting the agreement.

In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App.1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed,

> a court charged with determining whether . . . pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate that guilty pleas be made voluntarily and intelligently. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *Alford*, 400 U.S. at 31.

To succeed in a challenge for ineffective assistance of counsel, the petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). The petitioner is not entitled to the benefit of hindsight, may not

7

second-guess a reasonably-based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn.1999). "A trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed on appeal under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)). However, conclusions of law are reviewed under a purely de novo standard, with no presumption of correctness. *Id.* at 458.

In its oral findings from the bench, the post-conviction court denied the petition and commented as follows:

> In this particular case, [appellate counsel] has called trial counsel . . . . He testified to his memory and belief of what occurred and also explained the process as was presented on his side. The petitioner, of course, has given a varied version of the same set of - - the same set of circumstances.
>
> In weighing the credibility of each particular witness, the Court is required to, of course, look at the - - any prior statements that were made, any inconsistencies that could be applied based on either prior testimony offered through the transcript of the guilty pleas and anything else that the exhibits would suggest lead to inaccuracies. In this case and the most telling to the Court is that the [petitioner's] version does not meet up to the version set out in the transcript. . . . This Court - - the questions that - - the colloquy that we go through in accepting a guilty or a nolo contendere plea are designed not only to get an appropriate response, they are also designed to allow a trial Court, whatever Court, to look at the demeanor of a witness. This case had proceeded past jury selection, was preparing to try, the Court, upon the parties' suggestion, allowed some time to study this particular option - a guilty plea. The Court allowed a great deal of time to go into that. And [trial counsel] has testified in great detail about how much went into the explanation of the guilty plea. The . . . petitioner's version of that is not consistent with what happened in Court the day of the guilty plea, so that - - that inconsistency weighs heavily against the petitioner.

The Court finds, based on the transcript of the proceedings and the testimony offered today and the exhibits, that the plea was voluntarily made by [the petitioner], that he entered it knowingly, that he entered it intelligently, and that he knew what the outcome of this would be after a long deal of - - a long opportunity to speak to trial counsel.

Getting into the trial preparation, this Court - - if I'm not mistaken, we had a number of proceedings about this case leading up to the trial, we went through the jury selection. Looking at the questions presented to the jury, they were appropriate. They suggest that [trial counsel] was prepared for trial, that he knew the issues raised. The issues that had not - - [the petitioner] claims were not raised do not bare fruit and - - and in this Court's mind, there is just simply nothing to suggest that [trial counsel] left any stone unturned preparing for trial. So I'm gonna find that [trial counsel] was not deficient which means that we don't even get into the second part of the *Strickland* analysis gauging prejudice of the outcome.

From a reading of the post-conviction court's findings, it is clear that the court rendered its judgment based primarily upon a finding of credibility. Specifically, the court accredited trial counsel's testimony over the petitioner's testimony. As we have noted countless times, it is not the province of this court to reweigh or re-avaluate such determinations made by a post-conviction court. *Henley v. State*, 960 S.W. 2d 572, 579 (Tenn. 1997). It is the lower court who hears the witnesses testimony directly and observes first-hand the demeanor and behavior of the witness. As such, we afford the post-conviction the latitude to make such determinations and conduct our review accordingly.

Nothing in the record preponderates against the post-conviction court's findings that trial counsel was not deficient in his performance. Trial counsel testified that he was prepared for trial, that he had interviewed witnesses and found them unhelpful, and that he had discussed the case with the petitioner. Trial counsel was clear he was prepared to try the case. As noted by the court, previous appearances and the jury selection indicated that trial counsel was prepared and aware of the relevant issues. He testified that it was the petitioner who raised the issue of the plea agreement on the day of trial. He further testified that there was no coercion of the petitioner to accept the agreement. He stated that he read the agreement front and back to the petitioner, and the petitioner signed the agreement saying that he understood.

Nothing in the record contradicts this except the petitioner's own testimony at the hearing. As noted by the post-conviction court, that same testimony stands in conflict with the other evidence presented. The petitioner had multiple prior felonies involving guilty pleas so he was not unfamiliar with the process. Additionally, he was aware of this agreement prior to

9

the day of trial. The State had previously offered the agreement, and it remained "on the table."

The most telling evidence that the plea was entered knowingly and voluntarily is the guilty plea transcript itself. The record reflects that the trial court, prior to accepting the plea, extensively questioned and informed the petitioner of his rights and the details of the agreement itself. At no time did the petitioner give any indication that he was concerned, coerced, or that he did not understand what he was doing. The answers given by the petitioner to the litany of questions asked were not mere "lip service" answers. They were given under oath and cannot now be disavowed. They stand as evidence against the petitioner. The transcript also conflicts with the petitioner's testimony in that the petitioner directly questioned the court on at least two issues when he was unclear.

Again, the petitioner's argument is based almost exclusively on credibility, which the post-conviction court found the petitioner did not have. The record reflects that the petitioner was familiar with the criminal court system and was competent to make the decision to accept the agreement. Trial counsel was not ineffective in his representation of the petitioner. The record reflects a very generous plea agreement given the charges that the petitioner was initially charged with in the two cases. Additionally, it resolved that a Florida sentence would be served concurrently. All these factors weigh in favor of findings that the plea was knowingly and voluntarily entered. By the petitioner's own testimony, his second trial counsel told him that if he was innocent not to sign the plea agreement; thus, the petitioner was aware that the option was available.

The petitioner's contention with regard to the actual content of the plea agreement, *i.e.*, lack of listed ranges and possible sentences, strengthening his credibility is misplaced. Even if an accurate statement, it does not entitle him to relief. The fact that the information was not specified on the agreement in no way affects whether or not trial counsel and the court informed the petitioner of such information verbally. The record is clear that the petitioner was clearly aware of the information. Moreover, as pointed out by the State, the contention is simply wrong as the information was contained in the original agreement. It appears that the copy of the agreement in exhibit 2 was not a complete copy of the agreement. However, in exhibit 3, a full copy is included, and it denotes the information on the agreement.

10

**CONCLUSION**

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE